John FINN, Don Elliott and
Citizens Against Legalized Lottery, Petitioners;
and Marcus Halbrook, Intervenor *v.*
W.J. "Bill" McCUEN, Secretary of State, Respondent;
and Robert G. Walker, Winfred W. Batch, Clarence J.
Rice, and Arkansans for Legalized Lottery, Intervenors

90-232                                    798 S.W.2d 34

Supreme Court of Arkansas
Opinion delivered October 26, 1990

*Larry L. Page* and *William H. Sutton,* by: *Robert S. Shafer,* for petitioners.

*Wm. R. Wilson, Jr.,* for intervenor Marcus Halbrook.

*Steve Clark,* Att'y Gen., by: *Jeffery A. Bell,* Deputy Att'y Gen., for respondent.

*Smith, Stroud, McClerkin, Dunn & Nutter,* by: *John F. Stroud, Jr.,* for intervenor/respondent.

*Youngdahl, Trotter, McGowan & Farris,* by: *Scott C. Trotter,* for amicus curiae Campaign Ethics Committee.

DAVID NEWBERN, Justice. The respondent, W.J. "Bill" McCuen, Secretary of State, certified a proposed constitutional amendment to be placed on the ballot in the coming general

election. The petitioners, John Finn and Don Elliott, on behalf of themselves and others similarly situated, and an organization known as Citizens Against Legalized Lottery ask that we review Mr. McCuen's action in accordance with Ark. Const. amend. 7. They contend that the ballot title is insufficient and misleading and that certain signatures which were counted among those needed to place the initiated amendment on the ballot should not have been counted and thus the petition to have the proposed amendment placed on the ballot should not have been approved by Mr. McCuen. Mr. Marcus Halbrook has intervened on the side of these petitioners. These parties will be referred to collectively as "CALL."

The petition for review is opposed by Mr. McCuen and by Robert G. Walker, Winfred W. Batch, Clarence J. Rice, and an organization known as Arkansans for Legalized Lottery who have joined in Mr. McCuen's position by way of intervention. We also have received a brief joining the respondent's position from the Campaign Ethics Committee as *amicus curiae.*

Mr. McCuen has moved for the dismissal of the original action on the ground that it is untimely because it was not brought within a time prescribed by Ark. Code Ann. § 7-9-107(e)(B)(i) and (ii) (Supp. 1989). The motion is overruled because we find that the statute poses an unconstitutional bar to our hearing this case. On the merits of the challenge to the proposed amendment, we agree with CALL's contention that the ballot title is insufficient. The petition for review is thus granted, and we enjoin the secretary of state from placing the proposal on the ballot for the coming general election.

Walker, Batch, Rice, and a person named Simmons, who is now deceased, petitioned to have placed on the ballot an amendment to the Arkansas Constitution to authorize a state lottery and legalize bingo. They chose to follow the provisions of § 7-9-107(e) which gives the sponsor of a statewide initiative the choice of seeking an early approval by the attorney general of the popular name and ballot title of the proposed amendment. Subsection (e)(1)(A) requires the secretary of state to certify the popular name and ballot titles certified to him by the attorney general and to publish them in a newspaper with statewide circulation along with the entire proposed amendment. That same subsection

requires the publication to include a notice informing the public of the certification "and the procedure herein identified to govern any party who may contest such certification before the Supreme Court."

Subsection (e)(1)(B) of the statute provides in part: "(i) Any legal action against such certification shall be filed with the Supreme Court within forty-five (45) days of the Secretary of State's publication; (ii) No such action filed later than forty-five (45) days following publication shall be heard by the Supreme Court."

The attorney general approved the popular name and ballot title on the proposed amendment after amending them, as is permissible in accordance with subsection (b) of the statute. The secretary of state, Mr. McCuen, published the proposal. CALL did not bring its challenge, however, until more than forty-five days had passed. It chose instead to wait until the secretary of state had certified the petition with respect to popular name, ballot title, and the number of signatures necessary to have it placed on the ballot.

## 1. The motion to dismiss

### a. Declaratory or direct relief

If the statute requiring that a challenge to the certification of the popular name and ballot title be made within 45 days of publication governs, we must grant the motion to dismiss. CALL contends the statute is unconstitutional and thus should not govern. Mr. McCuen contends we have no authority to consider the constitutionality of the statute because we are limited by Amendment 7 to the issue of the sufficiency of the petition to have the proposed amendment on the ballot. It is argued that we are being asked to give a declaratory judgment on the question of the constitutionality of the statute and that we have no jurisdiction to do so.

We reject the argument that CALL is seeking declaratory judgment on the constitutionality of the statute. This is an original action to determine the sufficiency of a petition to have a matter placed on the ballot. The statute has been asserted as a bar to the action, and CALL has responded that the statute is not a

bar as it is unconstitutional. The issue of the validity of the statute is thus before us in this original action which does not seek declaratory relief but rather seeks a direct remedy. See *Boyett* v. *Boyett*, 269 Ark. 36, 598 S.W.2d 86 (1980), in which we noted that declaratory relief may not be sought where the issue is pending in other litigation, and *UHS of Arkansas, Inc.* v. *Charter Hospital of Little Rock, Inc.*, 297 Ark. 8, 759 S.W.2d 204 (1988), where we contrasted seeking declaratory relief with "ordinary" litigation. See also *Ferstl* v. *McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988), in which, by mentioning that no constitutional challenge had been made to a statute facilitating the operation of Amendment 7 we implied that such a question could have been raised.

By providing that an action challenging an early determination of the sufficiency of the popular name and ballot title of a proposed amendment "shall be filed" here within 45 days of publication and that such a challenge may not be filed unless it is done within that 45 day period, the statute has the effect of permitting and, as in this case requiring, that the challenge occur prior to a determination that there are sufficient signatures to have the initiated amendment placed on the ballot. The validity of the statute is directly in issue.

### b. Amendment 7

■ Our jurisdiction to entertain this original action is granted by Ark. Const. amend. 7 which provides in pertinent part: "Sufficiency — The sufficiency of all State-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." The issue we must decide here is whether the words granting us the power to review the secretary of state's decision of the "sufficiency of all . . . petitions" as used in the amendment means we may review a decision of the secretary of state that one aspect of a petition is sufficient without having all aspects of the petition in question before us. That is, may we review the popular name and ballot title certifications with respect to a petition which has not been certified as having a sufficient number of signatures to be placed on the ballot? We have clearly held that our authority under Amendment 7 is to review only petitions certified by the secretary

of state as sufficient in all respects.

### c. The cases

In *Rambo* v. *Hall*, 195 Ark. 502, 112 S.W.2d 952 (1938), a petitioner sought to restrain the secretary of state from certifying a petition because the ballot title of a proposed bill to be submitted to a vote of the people was insufficient. We treated the petition as one challenging the sufficiency of the proceedings under Amendment 7. We held that "[u]ntil the Secretary of State shall have acted upon the sufficiency of the petition" the challenge was premature.

In *Bailey* v. *Hall*, 198 Ark. 815, 131 S.W.2d 635 (1939), we reviewed the ballot title of a measure to be referred to the people. In the course of that decision, we noted that the signatures on the petition were not being challenged, and it was clear that the petition had been certified by the secretary of state in all respects.

Both the *Rambo* case and the *Bailey* case can be distinguished from the situation now before us. In the *Rambo* case, the secretary of state had taken no action whatever, and here he had certified the ballot title when Mr. McCuen contends the challenge should have been undertaken. In the *Bailey* case, we did not have before us the question whether we would have had jurisdiction if only one aspect of the petition had been certified.

In *Scott* v. *McCuen*, 289 Ark. 41, 709 S.W.2d 77 (1986), however, we were asked to consider an early certification of ballot title which was made prior to the certification of the signatures. We noted that the arguments there had to do with economy of the process of putting an initiated measure on the ballot. It was contended that, by allowing review of an early ballot title certification we could prevent the expense to the state of counting signatures to say nothing of the time and effort which would be expended by the parties in obtaining the signatures sufficient for certification. We held that the secretary of state had no authority to make any such partial certification and that we had no authority to review other than that granted in Amendment 7. We wrote: "Our jurisdiction attaches only after the petition is declared sufficient and that determination must be of the sufficiency of both the title *and* the signatures [emphasis in original]."

The only citation given for the quoted language was the *Bailey* case, and that was with a *"See"* prefix. The remainder of the opinion, however, was devoted to an explanation of the logic behind the decision:

> The argument for an early decision, primarily to save the sponsors' time and money has another side. Should we devote the time, effort and financial resources of this court and the parties to decide an issue that may never be presented to the voters? What if the Secretary of State refuses to cooperate with a sponsor? Would we alter Amendment 7 and order him to do something clearly not required? Would a premature decision by us be binding for four, six or eight years? . . . Our existing procedure does have a distinct advantage: it keeps us all honest. Sponsors know it is to their advantage to present an honest title so it will not be stricken at the last minute and we know that we are not rendering merely an advisory opinion which may become moot. We know our decision counts and we will be accountable for it. Any other course would discourage both honesty and responsibility; sponsors would be inclined to offer a misleading ballot title that might pass unnoticed and we would be deciding the case in the abstract [289 Ark. at 45, 709 S.W.2d at 79.]

While our judgment may have been short on citation of precedent, it clearly was not solely based on the *Bailey* citation but was a considered, reasoned decision of the six justices participating. It was a principled interpretation of Amendment 7 which we are unwilling to overturn.

The only meaningful distinction between the case before us now and the *Scott* case is, of course, the statute authorizing the secretary of state to make the early certification of the ballot title and providing for our review of it prior to the certification of the signatures. Given our very explicit statement of the limits on our jurisdiction under Amendment 7 in the *Scott* case, we must hold that any statute which purports to confer on us the power to review an initiative petition which has not been certified as to the popular name, ballot title, *and* signatures constitutes an unlawful and unconstitutional expansion of our jurisdiction.

The main case cited by Mr. McCuen and the intervenors

supporting his position is *Washburn* v. *Hall*, 225 Ark. 868, 286 S.W.2d 494 (1956). That case involved Act 195 of 1943 which was the precursor of Act 280 of 1989. Act 195 apparently was the general assembly's first attempt at economizing in the initiative and referendum area. It required that the sponsors obtain an attorney general opinion as to the sufficiency of ballot title prior to circulating an initiative referendum petition for signatures. Act 280, which apparently was passed in response to our decision in the *Scott* case, was an addition containing the statutory subsections in question in this case, that is, the ones purporting to permit the early certification by the secretary of state and review by this court of ballot title and popular name. Act 195 provided for determination by the attorney general of the sufficiency of the ballot title and provided for relief in this court if the attorney general refused to act. We approved Act 195, holding that it was not an unwarranted restriction on Amendment 7.

The issue in the *Washburn* case was whether the refusal of the secretary of state to certify a referendum was proper in view of the fact that it had no popular name or ballot title. We were not concerned with the provision in Act 195 for relief in this court in the event the attorney general refused to act. We only held that the secretary of state's refusal to certify the petition was proper and that the provisions of Act 195 for involving the attorney general in the secretary of state's decision as to the sufficiency of the petition was not a violation of Amendment 7. The case presents no help in the resolution of the case before us now. It certainly does not run contrary to our strong language and holding in the *Scott* case.

We hold that § 7-9-107(e)(B)(i) and (ii) are unconstitutional because they purport to permit this court to review a decision of the secretary of state with respect to the ballot title portion of a petition, and the only authority given this court by Amendment 7 is the authority to review the secretary of state's certification of a "petition" which includes both the ballot title and the signatures. In this case, the certification of the secretary of state may be reviewed because it is complete.

## 2. The ballot title

Having concluded that we are not barred from reviewing the merits of the secretary of state's decision with respect to the ballot title, we proceed to do so, and we find the ballot title which has been approved by both the attorney general and the secretary of state is insufficient.

We are liberal in construing Amendment 7 and determining sufficiency of a ballot title. *Dust* v. *Reviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). However, if information not given by a ballot title would "give the elector 'serious ground for reflection' it must be disclosed." *Gaines* v. *McCuen*, 296 Ark. 513, 758 S.W.2d 403 (1988).

We have no quarrel with the popular name of the proposed amendment which is "STATE LOTTERY, BINGO AND STATE LOTTERY COMMISSION AMENDMENT." The ballot title is as follows:

> An Amendment to Article 19, Section 14 of the Arkansas Constitution of 1874; to authorize a state lottery and legalize bingo; to form the State Lottery Commission which shall develop, implement and operate the lottery; to provide net revenues to benefit public education (including higher education); to develop a mechanism to grant or reject requests to operate bingo in the State of Arkansas.

In *Dust* v. *Reviere, supra,* we enjoined the secretary of state from placing on the ballot a proposed constitutional amendment which would have created a "new government entity, the Ratepayers Utility Board." We found the ballot title misleading in two respects. First, it provided the purpose of the act was to "represent and advocate the interests of residential and small business utility customers." The proposed act provided for appointments of persons by various state officials from various fields of endeavor. For example, the lieutenant governor was to appoint one from "at least three nonprofit consumer organizations having statewide membership." We decided the ballot title was insufficient because it did not inform the voter of "the interests of the seven people who will direct that Board and this is an important fact since their interests may not necessarily coincide with those of the

majority of the residential and small business customer."

Here, the ballot title does not reveal the fact that the proposed amendment actually names the persons to occupy the initial board positions. The proposed amendment provides that Walker, Batch, Rice, and the now-deceased Simmons are to be four of the five members of the board. To say the least, it is remarkable, if not unique, in our experience to find initial board members, either the quick or the dead, named in a proposal for a constitutional amendment creating a powerful arm of state government. We cannot resist analogizing to elections to public office. The electors are being asked to elect at least three people to important positions without being informed of that fact in the ballot title. Not only are the voters not to be informed in the ballot title of the names or interests of these prospective board members, they are not even being told that named persons will become the board.

The second reason given in the *Dust* case for holding the ballot title there insufficient was that the new proposed Ratepayers Utility Board was to be a new government entity subject to no check or control by any existing branch of government, and the voters were not being informed of that fact. We held that such a title tended to be misleading and not free from partisan coloring.

The proposed amendment in this case makes no mention whatever of any legislative, judicial, or executive department. The board to be created is to run the lottery operation without any known check from any other branch of government. In the *Dust* case, we wrote: "the voter has a right to know when a new entity or department of government is created that will not be subject to existing constitutional controls granted to [the legislature]."

In *Hobson* v. *Hall*, 229 Ark. 416, 316 S.W.2d 185 (1958), we were presented with a similar, although more troublesome, proposed amendment and ballot title. The ballot title referred to "states' rights" which, we wrote, was an appealing phrase, much like helping education in this case and helping the "aged and blind" in *Walton* v. *McDonald*, 192 Ark. 1155, 97 S.W.2d 81 (1936). The ballot title, however, did not address the portions of the proposed amendment which would have made a "State's Rights Commission" totally independent of the other branches of government. We wrote:

The Commission, created by Article I of the measure, consists of twelve members. Sections 5 and 6 of this article destroy the system of checks and balances that has characterized our government since its birth. Section 5 provides that no court shall be empowered to enjoin the Commission from performing the duties set out in the amendment. Those duties, however, are not clearly defined. By § 7 the Commission is invested with the duty and the power to "perform any and all things deemed necessary and proper" to protect the sovereignty of the several states and to resist the usurpation of the rights reserved to the states. Within the vague limits of this clause it is difficult to conceive of any power — legislative, executive, or judicial — that the Commission might not lay claim to. The ballot title, it may be observed, does not even mention the powers of the commission, much less does it give a hint of their unlimited scope [229 Ark. at 418-419, 316 S.W.2d at 187].

While the proposed lottery amendment does not contain provisions, like the ill fated states' right proposal, setting the commission free of all checks and balances, it contains nothing on the subject. It provides for the administration of the lottery and bingo by the proposed commission, period. The proponents have submitted an affidavit to the effect that they will seek an implementing legislative package, but that is not in the proposed amendment and, as far as we know, would not bind the proponents if the voters passed the proposed amendment. Again, if there were disclosure of these facts in the ballot title, voters would be given ample cause to pause and reflect before approving or disapproving the proposal.

Clearly, if the voters were made aware not only that, by voting for the proposed amendment they were creating an ostensibly autonomous board to handle what could become huge amounts of state money and naming persons to that board, they would have cause to pause and reflect. *Gaines* v. *McCuen,* 296 Ark. 513, 758 S.W.2d 403 (1988). The ballot title is insufficient.

In view of our decision on the merits of the ballot title, we need not consider the question raised about the validity of signatures counted after Mr. Simmons's death.

The secretary of state is enjoined from placing the proposed

State Lottery, Bingo and State Lottery Commission Amendment on the election ballot for the November 6, 1990, general election. The mandate implementing the opinion shall issue immediately. Any votes cast in the general election of 1990 on the proposed amendment which is the subject of this opinion will not be counted.

.PRICE, J., concurs.

DUDLEY, HAYS, and GLAZE, JJ., dissent.

DALE PRICE, Justice, concurring. I concur with the majority opinion in all respects except for the issue of the validity of signatures counted after Mr. Ray F. Simmons' death and the further insufficiency of the ballot title. Simmons died on December 25, 1989, and no showing has been made as to how many, if any, of the signatures had been obtained after his death.

On July 6, 1990, petitions were presented to the secretary of state for determination of sufficient signatures. On that date, it was determined there were insufficient signatures to place the issue on the ballot, and the secretary of state gave the proponents an additional 30 days to make up the deficiency. Inasmuch as the petitions circulated after July 6, 1990, still contained the name of Simmons, all signers would have of necessity been led to believe that Simmons was to be a commissioner.

The subsequently circulated petitions were defective. Since a dead man is incapable of performing duties as a commissioner, this fatally flawed any signatures obtained after July 6, 1990. The signers of the petitions were misled.

The signers were further misled when the proponents of the amendment sought to have themselves elected to a constitutional office without having signed a Political Practices Pledge as required by Ark. Code Ann. § 7-6-102(b) (1987). The required pledge reads, "I certify that I have never been convicted of a felony in Arkansas or in any other jurisdiction outside Arkansas." The ballot title did not inform the signers that the pledge was dispensed with or that a convicted felon might be elected commissioner.

I concur.

ROBERT H. DUDLEY, Justice, dissenting. For many years, proposed statewide initiated measures have been subject to last minute attacks filed in this court. See *Arkansas Women's Political Caucus* v. *Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984). At such a late hour, there has not been any way to amend the popular name or correct the ballot title. The result has been a waste of human resources in gathering signatures, a waste of money in campaign advertising and promotion, and, most of all, a defeat of the initiative process. See T. Kennedy, *Initiated Constitutional Amendments in Arkansas: Strolling Through The Mine Field*, 9 UALR L.J. 1, 52-53 (1986-87).

In order to make the initiative process more workable the General Assembly passed Act 280 in 1989 which is codified at Ark. Code Ann. § 7-9-107(e). The statute may be summarized as follows: The sponsor of a proposed statewide initiative may elect to submit the popular name and ballot title to the Attorney General before September 30 of the year before the election; the Attorney General must then accept or reject the proposed popular name and ballot title; if he approves the name and title he must deliver his certification to the Secretary of State who, in turn, certifies and approves the name and title, and publishes them in a newspaper with statewide circulation. Any legal action against the certification of the popular name and ballot title must be filed within 45 days of the publication. "No such action filed later than forty-five (45) days following publication shall be heard by the Supreme Court." Ark. Code Ann. § 7-9-107(e)(B)(ii) (Supp. 1989). If the sponsor filed the petition before September 30, and is successful in court or if no contest is filed, the sponsor may then proceed to collect signatures on the petitions.

In this case it is undisputed that the sponsors of the "Lottery Amendment" fully performed all of the statutory steps for obtaining early review of the popular name and ballot title under Ark. Code Ann. § 7-9-107(e). The proposed amendment was published on June 26 and 27, 1989. No objections were filed until September 10, 1990, which was much longer than forty-five (45) days following publication. The respondents subsequently obtained the required number of signatures. Thus, in spite of the statute, the petitioners waited until the eleventh hour to file this suit to bar the placing of the proposed "Lottery Amendment" on

the ballot. The majority opinion holds that the statute is impermissibly in conflict with Amendment 7 to the Arkansas Constitution and, accordingly, is invalid. It is my view that the statute does not conflict with the amendment.

Amendment 7 to the Constitution of Arkansas reserves to the people the power to initiate legislation and constitutional amendments. Ten percent of the voters "may propose a Constitutional Amendment by initiative petition. . . ." The sufficiency of all statewide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such cases. This Amendmemt "shall be self-executing, and all its provisions shall be treated as mandatory, but laws may be enacted to facilitate its operation." "No legislation shall be enacted, however, to restrict, hamper, or impair the exercise of the rights herein reserved to the people."

In their brief, the petitioners contend that the 1989 statute, Ark. Code Ann. § 7-9-107(e), is unconstitutional because it limits jurisdiction in the Supreme Court to forty-five (45) days while Amendment 7 contains no such limitation. The majority opinion ignores that argument and, therefore, impliedly rejects it. The signers of the majority opinion are correct in that regard. We have frequently upheld statutes of limitation against allegations of constitutional infirmity. *See, e.g., Jackson* v. *Ozment*, 283 Ark. 100, 671 S.W.2d 736 (1984). In *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931) we indicated, without so holding, that a statute of limitation on Amendment 7 actions might be valid. More recently we have upheld a limitation statute which is specifically applicable to Amendment 7. *Committee for Utility Trimming, Inc.* v. *Hamilton*, 290 Ark. 283, 718 S.W.2d 933 (1986). The reason we uphold such statutes is that they do not deprive this court of jurisdiction; they merely place a reasonable limitation upon the time in which jurisdiction is to be exercised. Thus, the reason the majority opinion is not based on the limitation period is clear.

Instead, it is based on the premise that Ark. Code Ann. § 7-9-107(e) violates Amendment 7 by *expanding* this Court's jurisdiction to allow review of the popular name and ballot title on a petition prior to obtaining signatures. I do not share that view.

432

The pertinent part of Amendment 7 provides: "The sufficiency of all State-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court. . . ." The language of the amendment simply does not prohibit a review by this court of the popular name and ballot title before the petitions are signed. The procedure under the 1989 statute does not expand this Court's jurisdiction. It does not require this court to review any more, or any less, than has been reviewed previously. It only provides the option for a bifurcated review. Accordingly, the statute is not in violation of Amendment 7. Such a conclusion seems unconditionally mandated when two other factors are considered. The first of these factors is that the amendment provides that "*laws may be enacted to facilitate its operation.*" The 1989 statute undoubtedly facilitates the operation of Amendment 7. The second factor is that an act of the legislature is presumptively constitutional, and all doubt as to its validity must be resolved in favor of the act unless it is clearly incompatible with our constitution. *Curry* v. *State*, 279 Ark. 153, 649 S.W.2d 833 (1983).

The majority opinion does not explain how the statute fails to facilitate the operation of Amendment 7, or how it restricts, hampers, or impairs the exercise of the initiative, power, or how it is incompatible with the amendment. Instead, the majority opinion claims to be bound by the holdings in three of our cases, *Scott* v. *McCuen*, 289 Ark. 41, 709 S.W.2d 77 (1986); *Bailey* v. *Hall*, 198 Ark. 815, 131 S.W.2d 635 (1939); and *Rambo* v. *Hall*, 195 Ark. 502, 112 S.W.2d 951 (1938). Yet, the majority opinion admits:

> Both the *Rambo* case and the *Bailey* case can be distinguished from the situation now before us. In the *Rambo* case, the secretary of state had taken no action whatever, and here he had certified the ballot title when Mr. McCuen contends the challenge should have been undertaken. In the *Bailey* case, we did not have before us the question whether we would have had jurisdiction if only one aspect of the petition had been certified.

That admission leaves the majority opinion with only one thread of authority, a sentence from the *Scott* case. That sentence is: "Our jurisdiction attaches only after the petition is declared

sufficient and that determination must be of the sufficiency of both the title *and* the signatures." *See Bailey* v. *Hall*, 198 Ark. 815, 131 S.W.2d 635 (1939)." The "see" prefix is fair warning that the *Bailey* case does not precisely stand for the position asserted in the sentence, and, in fact, it does not. The sentence is much broader than the holding in the *Bailey* case.

Accordingly, the majority's one thread of authority is clearly weak, at best. It breaks completely when one compares the sentence from *Scott* with the language of Amendment 7. Further, at the time *Scott* was decided there was no enabling act, passed pursuant to Amendment 7, which supplied the authority for early review of the ballot title. That authority was supplied by the 1989 act, after *Scott* was decided. In sum, the one sentence in the *Scott* case should not now be used to hold that the statute is repugnant to the amendment when, in fact, it is not.

The majority opinion also quotes from *Scott* at length concerning the reasons an early review of the popular name and ballot title is not wise. Those are political reasons why the 1989 act may be unwise, but they are not legal reasons why the statute is unconstitutional. The wisdom of legislation should be left to the General Assembly.

A case more in point is *Washburn* v. *Hall*, 225 Ark. 868, 286 S.W.2d 494 (1956). The background of the case is as follows: Amendment 7 provides that "[t]he sufficiency of all statewide petitions shall be decided in the first instance by the Secretary of State. . . ." The legislature passed an act, codified at Ark. Code Ann. § 7-9-107(a) — (d), which requires that the popular name and ballot title must first be submitted to the Attorney General. The review of the name and title by the Attorney General is not mentioned in Amendment 7. Still, we approved the act because:

> Obviously, the Legislature considered that in signing a referendum or initiative petition the signer should have the benefit of a popular name and ballot title that would give as much information about the proposed act as is possible to give by such means. It is apparent that the Legislature considered that the safer method would be to first submit the proposed popular name and ballot title to the Attorney General of the State for his approval and, if he did not approve that which was submitted, he should substitute

and certify more suitable ones. *This statute in no way curtails the operation of Amendment No. 7 but is in aid of the amendment* and insures the giving to the signer of the petition as much information as is possible and practical with regard to what he is being asked to sign.

(Emphasis added.)

Similarly, in 1989, the Legislature thought that the sponsors of an initiative or referendum should have the benefit of an early decision on the validity of the popular name and ballot title. The statute enacted "in no way curtails the operation of Amendment 7, but is in aid of the amendment. . . ." As a result of the statute, sponsors would no longer be required to speculate on whether the name and title are sufficient before they obtain the required number of signatures. The statute would neither restrict, nor hamper, nor impair the right of the people to exercise the power of initiative; rather, it would facilitate the exercise of that power in accordance with the very terms of Amendment 7. Accordingly, I dissent.

HAYS, J., joins in this dissent.

STEELE HAYS, Justice, dissenting. I hold no brief for the proposed lottery amendment, but I believe its approval or rejection must rest with the public rather than with this court. I earnestly disagree that the provisions of Act 280 of 1989 are unconstitutional. Amendment 7, quite sensibly, makes express provision that laws may be *enacted* to facilitate the operation of the initiative and referendum process and that, I believe, is answer enough. We have said it is for the legislature, rather than the courts, to decide how Amendment 7 is to be implemented. *Czech v. Munson*, 280 Ark. 219, 656 S.W.2d 696 (1983).

Today's holding, at the very least, denies to the general public the power to initiate law, provident or otherwise, so plainly reserved under Amendment 7. It is clear this court has departed from the rule of liberal construction in favor of a strict and ad hoc interpretation of Amendment 7 issues. That does not bode well for initiated reform in Arkansas.

I share the views of Justices Dudley and Glaze expressed in their dissenting opinions, in which I join.

TOM GLAZE, Justice, dissenting. In my view, the majority court's decision to declare Act 280 of 1989 unconstitutional is a serious error. A major purpose of that Act is to facilitate the peoples' right to initiate measures, under Amendment 7 to the Arkansas Constitution, when they believe their governing bodies or officials have either failed to act on some issue, or having acted, the people disagree with their public officials' actions. Act 280 is designed to ensure that the citizens, who initiate such measures, do so correctly and forthrightly *before* they circulate their initiative petitions to the voters for their signatures. It also provides confidence to the registered voters that the petitions they sign will actually place the measure on the next General Election ballot if the sponsors of that proposed measure successfully obtain the necessary number of signatures.

Under the Act, after the Attorney General approves a measure's ballot title and popular name and the Secretary of State publishes the proposed initiative measure, opponents of the measure have forty-five days to contest the ballot title's validity. The Act provides a reasonable time table for all questions concerning a ballot title or popular name to be resolved. Accordingly, those issues can be decided both well in advance of the General Election at which the people will vote on the initiative measure, and, as already mentioned, *before* the voters are asked to sign the petitions necessary to place the issue on the ballot.

Until Act 280 was enacted, the people and their organizations, supporting a proposed measure, were always placed in the position of expending their time, money and energies to circulate initiative petitions, even though they chanced having their entire efforts set aside at the last moment before the election. In other words, prior to Act 280, the Attorney General would approve a sponsor's measure's ballot title and popular name, and the opponents of the proposed measure would lie in wait to bring litigation immediately before the election, asking this court to knock the proposal off the ballot because they believed the Attorney General's approval of the ballot title was wrong. This system fostered and encouraged last minute attacks on proposed initiative measures. In turn, it thwarted the peoples' power to initiate laws and to vote on those laws, thus preventing them an independent voice in their government. Act 280 eradicated these obstacles to the placement of citizens' proposals on the ballot. It

also served, timewise, to remove this court's important decision making process, involving ballot title issues, from the emotional and political atmosphere of a General Election.

Contrary to the majority's position, Act 280 in no way negates or curtails this court's power under Amendment 7 to decide ballot title or popular name issues. Instead, it merely provides a reasonable time in which those issues should be presented. Amendment 7, in fact, provides that laws may be enacted to facilitate its operation.

Our court, in *Washburn v. Hall*, 225 Ark. 868, 286 S.W.2d 494 (1956), specifically considered a law, Act 195 of 1943, (now codified as Ark. Code Ann. § 7-9-107 (Supp. 1989)), which we clearly stated did not restrict Amendment 7, although that law provided for this court to hear grievances of sponsors of an initiative petition concerning the actions taken by the Attorney General after he reviewed the proposed measure's ballot title and popular name. Significantly, Act 195, like Act 280, provided for this court to decide such ballot title grievances *before* any petition is circulated for signatures. The court in *Washburn* said as follows:

> *Act No. 195* of 1943, Ark. Stats. § 2-208, *is no unwarranted restriction on Amendment No. 7. Obviously, the Legislature considered that in signing a referendum or initiative petition the signer should have the benefit of a popular name and ballot title that would give as much information about the proposed act as is possible to give by such means.* It is apparent that the Legislature considered that the safer method would be to first submit the proposed popular name and ballot title to the Attorney General of the State for his approval and, if he did not approve that which was submitted, he should substitute and certify more suitable ones. *This statute in no way curtails the operation of Amendment No. 7 but is in aid of the amendment and insures the giving to the signer of the petition as much information as is possible and practicable with regard to what he is being asked to sign.* (Emphasis added.)

In the present case, Act 280 provided a safe method by which the sponsors and opponents of the proposed lottery and bingo

amendment could resolve any differences they had over the proposal's ballot title or popular name. Once that was done, the voters signing the sponsors' petitions would have been given as much information as possible and practicable with regard to what he or she was being asked to sign. *See Washburn*, 225 Ark. at 871-872, 286 S.W.2d at 497. These procedures under the Act not only facilitated the peoples' right to initiate and to understand the proposed measures to be voted on at the next General Election, but at the same time, it allowed this court adequate time to deliberate and decide any ballot title or popular name issues.

The majority seems to rely almost entirely upon a sentence set out in the opinion in *Scott v. McCuen*, 289 Ark. 41, 709 S.W.2d 77 (1986), which stated that this court's jurisdiction in Amendment 7 cases attaches only after the petition is declared sufficient and that determination must be of the sufficiency of both the title *and* the signatures. From that language, the majority reasons that Act 280 cannot provide for this court to resolve ballot title issues before the petitions are circulated for signatures. Such a conclusion is wrong.

First, when *Scott* was decided, Act 280 was not law, therefore, at the time *Scott* was decided, the court was correct — this court, by law, considered both ballot title *and* signature issues only *after* the petitions were circulated. Since the *Scott* decision, Act 280 was enacted to provide a procedure whereby ballot title questions could be decided before the circulation of petitions. Second, the majority's conclusion as to what *Scott* says begs the question. While the majority opinion speaks in terms of Act 280 unlawfully expanding the court's jurisdiction, the pertinent constitutional issue, in my view, is whether Act 280 curtails this court's power, granted under Amendment 7, to decide either ballot title or signature questions? As I have discussed earlier, the Act actually enhances rather than restricts everyone's rights, duties and privileges granted under Amendment 7 — the sponsors, opponents, courts and voters. In any event, whether you view Act 280 as being too expansive or too restrictive, the majority fails to explain how Act 280 affects this court's powers under Amendment 7.

In conclusion, I agree the ballot title of the ill-fated lottery and bingo amendment is misleading. However, assuming Act

280's validity, the ballot title issue should not have been reached by the majority because the proposed measure's opponents failed to challenge the ballot title in timely fashion. While the majority's decision to remove this controversial lottery and bingo measure from the ballot will eventually dissolve into a dim memory, the decision in striking down Act 280 as unconstitutional does nothing for good government in the future. In fact, it ensures this court, in years to come, will continue to decide these important constitutional cases in a political atmosphere without having the deliberative time to do them justice.

In my opinion, Act 280 is constitutional and is thoroughly designed to promote and facilitate the interests of the peoples' right to initiate laws under Amendment 7. While Act 280's constitutionality is raised in the context of a controversial lottery and bingo proposal, and the opponents of that proposal failed to challenge it in a timely manner under the Act, I have every confidence in the voters of this State to decide the fate of this proposed amendment on its merits. Therefore, I would declare Act 280 constitutional, permit the people to vote on the amendment and deny the request for injunction in this cause.

HAYS, J., joins this dissent.