Dorothy Kiplinger, Chair Committee to legalize Bingo P.O. Box 2301 Jonesboro, AR 72402
Dear Ms. Kiplinger:
You have requested certification, pursuant to A.C.A. § 7-9-107, of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 POPULAR NAME AN AMENDMENT TO ONCE AND FOR ALL TIME CLARIFY THE CONFUSION OF THE APPLICATION OF THE LOTTERY PROHIBITION TO THE GAME OF BINGO CONDUCTED BY CERTAIN CHARITABLE ORGANIZATIONS
 BALLOT TITLE AN AMENDMENT DECLARING THE GAME OF BINGO CONDUCTED BY CHARITABLE ORGANIZATIONS EXEMPT FROM THE LOTTERY PROHIBITION OF THE ARKANSAS CONSTITUTION; DEFINING BINGO; PROVIDING FOR THE QUALIFICATIONS OF CHARITABLE ORGANIZATIONS; PROVIDING FOR THE REQUIREMENTS FOR PERMITS AND BECAUSE OF THE ELEMOSYNARY PURPOSES AND INTENT OF THIS AMENDMENT PROHIBITING UNNECESSARY INTRUSIVE REGULATION AND SUPERVISION; ENCOURAGING FAIR DEALING; PROVIDING A SEVERANCE AND REPEALING CLAUSE
You have submitted a popular name and ballot title for a similar proposed measure, which I rejected on the grounds of certain ambiguities in the text of the proposed measure. See, e.g., Op. Att'y Gen. No. 99-410.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed measure, as well as your proposed popular name and ballot title, under the above precepts, it is my conclusion that I must reject both your proposed popular name and ballot title due to certain unresolved ambiguities in the text of your proposed measure. I cannot fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable at this time to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107(b).
The proposed measure contains various ambiguities. I will give examples of some specific areas of concern; however, it must be understood that my discussion of these areas of concern is not exhaustive.
The following ambiguities must be clarified in your measure before I can perform my statutory duty:
 (1) Section I of your proposed measure expressly exempts from Article 19, § 14 of the Arkansas Constitution "charitable organizations which have been operating in the State of Arkansas and qualified as 501(c) and approved by the Internal Revenue Service for a period of greater than five years." Section II allows the Department of Finance and Administration to grant permits to conduct the game of bingo to "any church, veteran, senior citizen or charitable organization" that present a certificate showing the approval by the Internal Revenue Service of tax exempt status greater than five years under Section 501(c) or its equivalent." Because of its inclusion of organizations that are "equivalent" to 501(c) organizations, Section II appears to allow the grant of permits to a larger group of organizations than are expressly exempted from Article 19, § 14 in Section I. Moreover, whereas Section I requires the exempted organizations to have been operating in the State of Arkansas, Section II does not include a similar requirement. These conflicts between Sections I and II could give rise to confusion as to which organizations are legally exempt from the lottery prohibition.
 (2) Section III of your proposed measure authorizes "all games of bingo normally played." This language is very broad and cannot be summarized in a ballot title in a way that would adequately advise the electorate as to what games would be permitted if the measure is approved.
 (3) Section III of your proposed measure also provides that" all checks written or taken shall be collectable as in all other legitimate business conducted in the state." The scope of this provision is unclear. It cannot be summarized so as to advise the electorate which checks are affected by this provision. More specifically, it is unclear whether it applies only to winnings, pay-to-play fees, or whether it also encompasses checks written or given in other capacities as well, and whether it creates a legal presumption that would shift the burden of proof in a challenge to collection.
 (4) Section IV of your proposed measure provides that "all applicants for employment in any capacity, who are otherwise qualified shall be given preference who are at the time dependent on public welfare[.]" This language is very broad. It is unclear whether it is intended to apply to applicants for employment only in connection with the operation of the game of bingo, or whether it is intended to apply to applicants for employment in any private business or government agency. In short, it is entirely unclear from this language which employers are to be bound by the provision, and which applicants for employment are to benefit from it.
 (5) Section V of your proposed measure prohibits the state, counties and cities from passing laws or regulations that would hinder the purpose of the activities authorized by the proposed amendment. Again, this provision is very broad and raises a question concerning scope. Particularly unclear is whether this provision is intended to repeal long-standing regulatory authority of the state, counties, and cities under Arkansas law. This concern is bolstered by the general repealer clause of Section VII.
Unless the foregoing ambiguities are resolved, I will be unable to summarize your proposed amendment effectively. I reiterate that I do not purport to have set out an exhaustive list of possible problems with the proposed measure. For this reason, I recommend that you consult with legal counsel of your choice, or with a person who is skilled in the drafting of legislation.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal. At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen,303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See
A.C.A. § 7-9-107(c). You may, after clarification of the issues discussed above, resubmit your proposed amendment, along with a new proposed popular name and ballot title, at your convenience. I anticipate that some changes or additions to your submitted ballot title may be necessary to reflect adequately the clarified language of the proposed amendment. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General