Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted several similar measures, each of which I rejected due to ambiguities in the text of your proposed amendments. See, e.g., Ops. Att'y Gen. 2000-263, -247, 241, -240, -214, -193, -192, -186, -163, -152, -138, -135 and -120.
You have made changes to your measure and submitted a revised popular name and ballot title for my certification. I must again reject your proposed popular name and ballot title, due to continuing ambiguities in the text of your proposed measure and due to continuing drafting errors. My conclusions regarding these problems are explained below.
Your proposed popular name and ballot title state:
 POPULAR NAME PAYMENT OF CANVASSERS AND SPONSORS WITH STATE AND LOCAL GROSS RECEIPT TAX ON CERTAIN FOOD ITEMS BEFORE EXEMPTING SAID TAX
 BALLOT TITLE PROVIDING FOR THE SEPARATE RECEIPT AND ACCOUNTING, BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION, OF THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITEMS; DEFINING FOOD ITEMS AS ANY ITEM THAT IS EDIBLE TO INCLUDE DRINKABLE FOOD ITEMS AND NON-PRESCRIPTION VITAMIN SUPPLEMENTS NOT CONTAINING ALCOHOL WITH EXCEPTION OF EXCLUSION AS NOTED HEREIN; PROVIDING FOR THE DEPOSIT OF FUNDS IN THE CANVASSER'S ACCOUNT ON THE 31ST DAY FROM THE DATE OF VOTER APPROVAL OF THIS AMENDMENT, BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION, OF THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITEMS AS DEFINED HEREIN FOR 180 DAYS, AND REQUIRING THE IMMEDIATE DEPOSIT OF SUCH MONEY IN THE CANVASSER'S ACCOUNT FOR SAID TIME; CREATING THE CANVASSER'S ACCOUNT SEPARATE AND APART FROM THE STATE TREASURY TO BE ADMINISTERED BY THE STATE BOARD OF FINANCE; AMENDING A.C.A. § 19-4-803 TO EXEMPT THE "CANVASSER'S ACCOUNT" FROM THE REQUIREMENTS OF AN APPROPRIATION; EMPOWERING THE STATE BOARD OF FINANCE TO DISTRIBUTE THE CANVASSER'S ACCOUNT MONEY TO BE KEPT AS DISTINCT CASH FUNDS SEPARATE AND APART FROM THE STATE TREASURY; EMPOWERING THE STATE BOARD OF FINANCE TO MANAGE AND INVEST THE CANVASSER'S ACCOUNT IN COMPLIANCE WITH THE PRUDENT INVESTOR RULE AND OTHER APPLICABLE STANDARDS IN A.C.A. §§ 24-3-408, -414, -415, -417 TO -425 AND A.C.A. § 19-3-518; EMPOWERING THE STATE BOARD OF FINANCE TO HIRE PROFESSIONALS TO ASSIST IN THE INVESTMENT OF THE CANVASSER'S ACCOUNT, AND AUTHORIZING THE BOARD TO USE INVESTMENT EARNINGS FROM THOSE FUNDS TO COMPENSATE SUCH PROFESSIONALS; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 40% OF THE PRINCIPAL AMOUNT OF THE CANVASSER'S ACCOUNT TO BE DIVIDED BY THE NUMBER OF REGISTERED VOTER'S SIGNATURES COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE GENERAL ELECTION BALLOT WITH EACH CANVASSER RECEIVING A PAYMENT FROM THE ACCOUNT FOR EACH REGISTERED VOTER'S SIGNATURE THE CANVASSER HAS OBTAINED THAT HAS BEEN COUNTED AS A VALID REGISTERED VOTER BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE GENERAL ELECTION BALLOT; REQUIRING THE STATE BOARD OF FINANCE TO PAY 10% OF THE PRINCIPAL AMOUNT OF THE CANVASSER'S ACCOUNT TO THE SPONSOR OF THIS AMENDMENT; REQUIRING THE STATE BOARD OF FINANCE TO MAKE SUCH AMOUNTS PAYABLE TO THE CANVASSERS AND SPONSOR OF THIS AMENDMENT WITHIN 30 WORKING DAYS AFTER THE FINAL DEPOSIT OF THE PRINCIPAL AMOUNT IN THE CANVASSER'S ACCOUNT; PROVIDING 50% OF THE PRINCIPAL AMOUNT OF DEPOSIT BE RETAINED IN THE CANVASSER'S ACCOUNT; PROVIDING ALL INVESTMENT EARNINGS ON THE PRINCIPAL AMOUNT OF THE CANVASSER'S ACCOUNT BE RETAINED IN THE ACCOUNT; PROVIDING NO PAYMENT SHALL BE MADE BY THE STATE BOARD OF FINANCE TO ANY PERSON FOR THEIR SIGNATURE ON ANY PETITION AS A PETITIONER WITH THEIR SIGNATURE AS A CANVASSER; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 40% OF THE INVESTMENT EARNINGS FROM THE CANVASSER'S ACCOUNT EARNED 24 MONTHS PREVIOUS TO THE DATE OF VOTER APPROVAL OF ANY STATE WIDE AMENDMENTS OR ACTS, AND DIVIDED BY THE TOTAL NUMBER OF REGISTERED VOTER'S SIGNATURES COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE ALL THOSE AMENDMENTS OR ACTS ON THE GENERAL ELECTION BALLOT THAT HAVE BEEN APPROVED BY THE VOTERS WITH EACH CANVASSER RECEIVING A PAYMENT FROM THE ACCOUNT FOR EACH REGISTERED VOTER'S SIGNATURE THE CANVASSER HAS OBTAINED THAT HAS BEEN COUNTED AS A VALID REGISTERED VOTER BY THE SECRETARY OF STATE TO PLACE AN AMENDMENT OR ACT ON THE GENERAL ELECTION BALLOT REGARDLESS OF THE NUMBER OF SIGNATURES A CANVASSER HAS OBTAINED ON THE PETITIONS OF ANY ONE OR MORE AMENDMENTS OR ACTS APPROVED BY THE VOTERS; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 10% OF THE INVESTMENT EARNINGS FROM THE CANVASSER'S ACCOUNT EARNED 24 MONTHS PREVIOUS TO THE DATE OF VOTER APPROVAL OF ANY STATE WIDE AMENDMENTS OF ACTS, AND DIVIDED BY THE NUMBER OF STATE WIDE AMENDMENTS OF ACTS APPROVED BY THE VOTERS WITH EACH SPONSOR RECEIVING A PAYMENT FROM THE ACCOUNT FOR EACH AMENDMENT OR ACT THE SPONSOR HAS APPROVED BY THE VOTERS REGARDLESS OF THE NUMBER OF AMENDMENTS OF ACTS A SPONSOR HAS APPROVED BY THE VOTERS; REQUIRING THE STATE BOARD OF FINANCE TO PAY THE CANVASSERS AND SPONSORS FROM THE CANVASSER'S ACCOUNT WITHIN 30 DAYS AFTER PASSAGE OF ANY STATE WIDE AMENDMENT OR ACT; PROVIDING ANY PAYMENT FROM THE CANVASSER'S ACCOUNT BY THE STATE BOARD OF FINANCE TO ANY CANVASSER AND SPONSOR OF ANY STATE WIDE AMENDMENT OR ACT APPROVED BY THE VOTERS TO BE EXEMPT FROM ANY STATE TAX; REQUIRING REDEPOSIT OF INVESTMENT EARNINGS IN THE CANVASSER'S ACCOUNT NOT USED FOR THE PURPOSES HEREIN STATED; PROVIDING ON THE 211TH DAY FROM THE DATE OF VOTER APPROVAL OF THIS AMENDMENT FOOD ITEMS, AS DEFINED HEREIN, SHALL BE EXEMPT FROM THE STATE AND LOCAL RECEIPT SALES TAX WITH EXCEPTION OF EXCLUSION AS NOTED HEREIN; PROVIDING THIS AMENDMENT SHALL NOT AFFECT THE TAX ON THOSE ITEMS UNDER A.C.A. § 26-57-901 OF THE "ARKANSAS SOFT DRINK TAX ACT"; PROVIDING THIS AMENDMENT SHALL NOT AFFECT ANY TAX ON PREPARED RESTAURANT FOODS DEFINED AS A RESTAURANT OR SIMILAR BUSINESS UNDER A.C.A. § 20-57-208; PROVIDING THIS AMENDMENT SHALL NOT AFFECT ANY TAX ON ALCOHOLIC BEVERAGES; PROVIDING THIS AMENDMENT SHALL BE SELF EXECUTING; TO PROVIDE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and your proposed ballot title because the text of your proposed measure contains certain ambiguities, as well as numerous spelling, punctuation, grammatical, and syntax errors, that render the measure ambiguous and difficult to understand, and therefore incapable of being fairly and accurately summarized. I refer to the following problems:
 (1) Section One of your proposed measure begins with the following clause: "On the thirty first (31st) day from November 5th, 2002 after approval of this amendment by the voters." This clause is not a complete sentence. It is unclear what is intended to happen on that day. Although it is likely that the intent is stated in the following sentence (which provides that sales taxes are to be accounted for separately), this provision is also unclear. It does not state whether this separate accounting is to begin on November 5, 2002, or to end on that date, nor does it specify a particular time frame during which taxes are to be separately received and accounted for. Granted, the last sentence in this section does refer to a 180-day time frame, but the preceding sentences do not specify when that time frame is to begin and end. These ambiguities in Section One lead to further confusion as to the meaning of Section Three (6)(f), concerning the dates for distributions from the Canvasser's Account.
 (2) Section Two and Sections Three (6)(g) and (j) of your proposed measure grant authority to the State Board of Finance to use investment earnings on the Canvasser's Account to pay certain expenses and make certain distributions. Section Three(5) contains an apparent conflict with these provisions, in light of the fact that it provides that" any and all amounts of investment earnings from the principal deposit of funds . . . shall be retained in the Canvasser's Account."
 (3) Section Three (6)(a) of your proposed measure provides that 40% of the Canvasser's Account is to be distributed to the canvassers for the amendment. Section Three (6)(b) directs such distribution by stating that "the amount of the Canvasser's Account, as provided in (6)(a) of this Section, shall be divided. . . ." It is unclear whether this reference to "the amount of the Canvasser's Account" is a reference to the entire amount in the account, or to the 40% of principle that is described in Section Three (6)(a).
 (4) Sections Three(6)j — (n) contain various provisions relating to "the sponsor." The term "sponsor" is not defined in the measure, and these provisions do not clarify precisely who would be entitled to receive the benefit intended by these provisions to accrue to "the sponsor."
 (5) Your proposed measure continues to contain certain grammatical, spelling, and syntax errors, despite my repeated admonitions. For example, Section Three (6)(n) states: "Any amount paid . . . shall have that amount of payment exempt[.]" This statement does not make sense. Another example of such errors is your continued use of the contraction "it's" rather than the possessive form "its." See Section Three(1) ("Such fund shall be restricted in it's use. . . .") The contraction of "it is", as used in this sentence, simply makes no sense.
As I have pointed out to you on previous occasions, my office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). The issues listed above are the types of problems that compel me to continue to reject your proposed measures.
Mr. Emigh, I am fully aware that you are entitled under the provisions ofAmendment 7 to the Arkansas Constitution to propose measures of thistype. I commend you for your persistence in that regard. However, thefact that the problems discussed above recur in your repeated submissionswithout correction lead me to surmise that you have not obtained theguidance of legal counsel, as I have previously urged you to do. Yourre-submissions under these circumstances do not further your goal ofreforming the law. Moreover, they result in a poor use of publicresources by requiring my staff to devote an inordinate amount of time toreviewing uncorrected submissions. I support your right of initiativeunder Amendment 7, but believe this right will be meaningless if you areunable to submit a measure that can be fairly and adequately summarized.For this reason, I strongly recommend that you refrain from submittingany further measures to my office until you have obtained legal counselto assist you in drafting a measure that meets the requirements of law.
Sincerely,
MARK PRYOR Attorney General