Mr. Barry Emigh 1104 Seventh Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted four similar measures that I rejected due primarily to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. Nos. 2000-312, 2000-288, 2000-239 and 2000-215. You have made revisions to your proposed amendment and now submit the following popular name and ballot title for my certification:
 Popular Name OPERATION OF BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS, AND OPERATION OF GAMBLING ON WATER VESSELS
 Ballot Title AN AMENDMENT PROVIDING FOR THE IMMEDIATE OPERATION OF BINGO AS THE RISKING OF MONEY ON A GAME PLAYED WITH CARDS HAVING NUMBERED SQUARES CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY BY COVERING THE NUMBERS ON THE CARDS IN ANY SUCH MANNER AS SHALL BE REQUESTED BY THE OPERATOR OF THE GAME AS A VOLUNTARY OPTION OF OPERATION BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; PROVIDING FOR THE IMMEDIATE OPERATION OF RAFFLES AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE OR PRIZES AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE AS A VOLUNTARY OPTION OF OPERATION BY ANY NON-PROFIT ORGANIZATION INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; AUTHORIZING THE IMMEDIATE OPERATION OF GAMBLING AND GAMING DEVICES BY BARRY LEE EMIGH, AND TO HIRE PERSONS TO OPERATE GAMBLING AND GAMING DEVICES, AND TO CONTRACT SERVICES FOR PERSONS TO OPERATE GAMBLING AND GAMING DEVICES TO BE OPERATED ONLY ON WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHOUT LICENSE OR FEE ON ANY DAY FOR THE WHOLE OF A 24 HOUR DAY WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES ONLY ON THOSE WATER VESSELS OPERATING GAMBLING ONLY DURING THE OPERATION OF GAMBLING WITHOUT LICENSE OR FEE WITHIN ANY COUNTY OF THE STATE WITH EXCEPTION OF EXCLUSION AS PROVIDED HEREIN; DEFINING GAMBLING AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS ON A CHANCE WHERE ONE MUST BE LOSER AND THE OTHER GAINER WITH THE USE OF COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEEL, SLOT MACHINES OF ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS USED IN ANY MANNER AND GAMING TABLES OF ANY KIND FOR THE USE OF DICE USED IN ANY MANNER AS A VOLUNTARY OPTION OF OPERATION OF ANY ONE, OR MORE, OR ALL OF THE AFOREMENTIONED GAMBLING AND GAMING DEVICES; PROVIDING THE OPERATION OF GAMBLING AND GAMING DEVICES ON ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE SHALL BE TRANSFERABLE FROM BARRY LEE EMIGH TO HIS HEIRS, THEIR HEIRS AND SO ON, AND TO PROVIDE SUCH TRANSFER OF AN INHERITANCE TO BE WITHOUT TAXATION OR FEE BY THE STATE ON THE PROPERTY USED FOR THE PURPOSE OF GAMBLING; PROVIDING FOR THE TRANSFER OF THE OPERATION OF GAMBLING AND GAMING DEVICES BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON TO ANY OTHER PERSON, COMPANY OR CORPORATION TO BE APPROVED BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES OF THE GENERAL ASSEMBLY; PROVIDING ANY CONTRACTS FOR WORK, CONTRACTS FOR SERVICES TO INCLUDE THE OPERATION OF GAMBLING AND GAMING DEVICES, LEASE OF PROPERTY, BANK LOANS AND LIENS ON PROPERTIES USED FOR THE GAMBLING OPERATION OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION AS PROVIDED IN THIS AMENDMENT SHALL NOT REQUIRE THE APPROVAL OF THE GENERAL ASSEMBLY; AUTHORIZING THE LEGAL SHIPMENT OF GAMBLING DEVICES ONTO ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR OPERATED BY ANY OTHER PERSON, COMPANY OR CORPORATION; PROHIBITING ANY PERSON UNDER THE AGE OF 21 SHALL TO BE ALLOWED TO PARTICIPATE IN GAMBLING ON ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR OPERATED BY ANY OTHER PERSON, COMPANY OR CORPORATION; REQUIRING A 16% TAX ON THE NET GAMING REVENUE FROM EACH WATER VESSEL OPERATING GAMBLING AND GAMING DEVICES ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE TO BE PAID BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR BY ANY PERSON, COMPANY OR CORPORATION, AS PROVIDED IN THIS AMENDMENT, TO BE PAID TO THE DEPARTMENT OF FINANCE AND ADMINISTRATION ON THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR AND DISTRIBUTED BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION WITHOUT AN APPROPRIATION BY THE GENERAL ASSEMBLY AS FOLLOWS: AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DISTRIBUTE 6% OF THE ANNUAL NET GAMING REVENUE TAX FROM ALL WATER VESSELS OPERATING GAMBLING AND GAMING DEVICES TO BE PAID TO THE STATE'S GENERAL FUND; AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DISTRIBUTE 6% OF THE ANNUAL NET GAMING REVENUE TAX TO BE PAID TO THE COUNTY'S GENERAL FUND FROM EACH VESSEL OPERATING GAMBLING AND GAMING DEVICES WITHIN THAT COUNTY AND TO DIVIDE THE 6% OF THE ANNUAL NET GAMING REVENUE TAX EQUALLY WHEN A VESSEL IS OPERATING GAMBLING AND GAMING DEVICES WITHIN THE JURISDICTION OF A CITY WITH 3% OF THE ANNUAL NET GAMING REVENUE TAX BEING PAID TO THE CITY'S GENERAL FUND AND 3% PAID TO THE COUNTY'S GENERAL FUND FROM THOSE WATER VESSELS OPERATING GAMBLING AND GAMING DEVICES WITHIN BOTH THOSE JURISDICTIONS; AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DIVIDE 18% OF THE ANNUAL NET GAMING REVENUE TAX BY THE NUMBER OF COUNTIES NOT HAVING GAMBLING AND GAMING DEVICES OPERATED WITHIN THOSE COUNTIES AND TO DISTRIBUTE AN EQUAL PART OF THAT AMOUNT TO BE PAID TO EACH OF THE COUNTY'S GENERAL FUNDS NOT HAVING GAMBLING AND GAMING DEVICES OPERATED WITHIN THOSE COUNTIES; AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DIVIDE 70% OF THE NET GAMING REVENUE TAX BY THE NUMBER OF STUDENTS ATTENDING ANY, AND ALL, PUBLICLY FUNDED INSTITUTES OF EDUCATION IN THE STATE FROM THE PREVIOUS YEAR'S ENROLLMENT WITH EACH EDUCATIONAL INSTITUTE BEING PAID BASED UPON THE NUMBER OF STUDENTS HAVING BEEN ENROLLED AT THAT INSTITUTE THE PREVIOUS YEAR; AUTHORIZING THE GENERAL ASSEMBLY BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES TO REGULATE THE APPROPRIATE USE OF THE FUNDS DISTRIBUTED TO ANY, AND ALL, PUBLICLY FUNDED INSTITUTES OF EDUCATION, AS PROVIDED IN THIS AMENDMENT, AND PROVIDE FOR THE APPROPRIATE USE OF SUCH FUNDS IN THE EVENT OF AN EDUCATIONAL INSTITUTE CLOSING; EXEMPTING THE DISTRIBUTION OF THE 16% ANNUAL NET GAMING REVENUE TAX, BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION, FROM THE REQUIREMENTS OF AN APPROPRIATION BY THE GENERAL ASSEMBLY; AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DISTRIBUTE THE 16% ANNUAL NET GAMING REVENUE TAX AS PROVIDED HEREIN WITHIN 20 WORKING DAYS AFTER THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR; AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DEDUCT THE REASONABLE COSTS AND EXPENSES OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DISTRIBUTE THE 16% ANNUAL NET GAMING REVENUE TAX FROM THE 16% ANNUAL NET GAMING REVENUE; PROVIDING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION SHALL PAY AN ADDITIONAL 1% OF THE ANNUAL NET GAMING REVENUE TO THE DEPARTMENT OF FINANCE AND ADMINISTRATION ON THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR EARNED AFTER PASSAGE OF THIS AMENDMENT AND ENDING ON THE FIRST TUESDAY OF NOVEMBER 2005 WITH THE ANNUAL AMOUNT DIVIDED BY THE NUMBER OF REGISTERED VOTER'S SIGNATURES COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE REGULAR GENERAL ELECTION BALLOT WITH EACH CANVASSER BEING PAID FOR EACH SIGNATURE THEY HAVE OBTAINED THAT IS COUNTED AS A VALID REGISTERED VOTER'S SIGNATURE BY THE SECRETARY OF STATE; NO CANVASSER SHALL RECEIVE A PAYMENT FOR THEIR OWN SIGNATURE ON A PETITION WITH THEIR SIGNATURE AS A CANVASSER; ANY PAYMENT BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO A CANVASSER OF THIS AMENDMENT FROM THE ADDITIONAL 1% NET GAMING REVENUE AS PROVIDED HEREIN SHALL BE EXEMPT FROM ANY, AND ALL, STATE TAXES; THE DEPARTMENT OF FINANCE AND ADMINISTRATION SHALL DISTRIBUTE THE ADDITIONAL 1% OF THE ANNUAL NET GAMING REVENUE AS PROVIDED HEREIN TO THE CANVASSERS OF THIS AMENDMENT WITHIN 20 WORKING DAYS FROM THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR WITHOUT APPROPRIATION BY THE GENERAL ASSEMBLY; AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DEDUCT THE REASONABLE COSTS AND EXPENSES OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DISTRIBUTE THE ADDITIONAL 1% ANNUAL NET GAMING REVENUE TO THE CANVASSERS OF THIS AMENDMENT FROM THE ADDITIONAL 1% ANNUAL NET GAMING REVENUE; EXEMPTING THE DISTRIBUTION OF THE ADDITIONAL 1% ANNUAL NET GAMING REVENUE PAID TO THE CANVASSERS OF THIS AMENDMENT, BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION, FROM THE REQUIREMENTS OF AN APPROPRIATION BY THE GENERAL ASSEMBLY; AUTHORIZING THE LEGAL VOTERS OF ANY COUNTY WITH THE LOCAL BALLOT OPTION UNDER THE PROVISIONS OF AMENDMENT 7 OF THE ARKANSAS CONSTITUTION TO ACCEPT OR REJECT BY THE LEGAL VOTERS OF THAT COUNTY THE OPERATION OF GAMBLING AND GAMING DEVICES ON ALL WATER VESSELS ON ANY NAVIGABLE WATER WAYS OR PUBLIC LAKES WITHIN THAT COUNTY OPERATED BY BARRY LEE EMIGH OR HIS HEIRS, THEIR HEIRS AND SO ON, OR OPERATED BY ANY OTHER PERSON, COMPANY OR CORPORATION; EXCEPT AS SPECIFIED IN THIS AMENDMENT THERE SHALL BE NO OTHER TAX OF ANY KIND LEVIED BY THE STATE ON THE REVENUE DERIVED FROM THE OPERATION OF GAMBLING AND GAMING DEVICES ON ANY WATER VESSEL OPERATED ON ANY NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION; NO PROPERTY TAX, FEES, OR ASSESSMENT OF ANY KIND SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, ON ANY WATER VESSEL AND THE CONTENTS THEREIN USED FOR THE OPERATION OF GAMBLING ON ANY NAVIGABLE WATER WAYS OR PUBLIC LAKES WITHIN THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION AS PROVIDED HEREIN; DEFINING THE NET GAMING REVENUE AS THE AMOUNT OF MONEY PROFITED BY GAMBLING AND GAMING DEVICES AFTER THE PAYMENT OF CANVASSERS, PAYMENT OF GAMING LOSES, ANY AND ALL OPERATIONAL COSTS TO INCLUDE, BUT NOT LIMITED TO, EMPLOYEE PAYROLL AND BENEFITS, UTILITIES, LEASES OF PROPERTY, CONTRACTS FOR SERVICES, COMPLIMENTARY ALCOHOLIC BEVERAGES, ADVERTISING AND PROMOTION, AND ALL FEDERAL TAXES; AUTHORIZING THE STATE AUDITOR TO ANNUALLY AUDIT THE BOOKS, RECORDS AND FINANCIAL AFFAIRS OF THE GAMBLING OPERATION OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION AS PROVIDED HEREIN ON THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR; PROVIDING THIS AMENDMENT TO BE SELF EXECUTING; TO PROVIDE THE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and your proposed ballot title because the text of your proposed measure contains certain ambiguities that render the measure difficult to understand, and therefore incapable of being fairly and accurately summarized. Among the ambiguities I have noted are the following:
 1. Section Two of your proposed amendment, under subsection (1), authorizes you to "hire persons to operate gambling" and "contract services for other persons to operate gambling. . . ." See also Section Two, subsection (5), regarding "contracts for work" and "contracts for services." While there presumably is a distinction between these two means of involving other persons in running the gambling operation(s), this distinction should, in my view, be clarified so that it can be clearly summarized in the ballot title. If, for instance, this authorizes you to subcontract the gambling operation to an independent contractor, this may be viewed as an essential fact for the voter. The vagueness of the current language prevents me, however, from determining the actual intent.
 2. Section Two, subsection (6), authorizes county voters to" accept or reject . . . the whole operation of gambling and gaming devices on all water vessels. . . ." This language, read literally, means that the vote would be on whether to accept or reject gambling on all vessels. If I am correct in my suspicion that this may not have been your intention, this language should be clarified for proper reflection in the ballot title.
 3. Section Five, in the introductory language in subsection (1), states that the Department of Finance and Administration (DFA) "shall distribute the sixteen (16%) percent annual net gaming revenue tax as follows. . . ." This indicates that DFA has no discretion in the matter. The introductory phrase in each of the remaining subsections, however, states that DFA "is authorized to pay" the relevant percentage as specified. This infers some discretion on the part of DFA in making the actual distribution. If you intend for DFA to be obligated to make the specified distributions, this should be restated clearly in the text.
 4. An ambiguity also arises under Section Five, subsection (1) (b) and (c), regarding payment of the tax to the county or to the county and city when a water vessel operates gambling "within a county" or "within the jurisdiction of a city." These subsections fail to address how it will be determined where a particular vessel is operating. If, for instance, the vessel is moving during the gambling operations, it becomes apparent that issues may arise concerning its location for purposes of the tax distribution. Because this point is not addressed, I cannot substitute language in the ballot title.
 5. Section Six contains the same ambiguity noted above regarding Section Five with respect to DFA's obligation or discretion to pay canvassers as specified. It states at one point the DFA "shall distribute" the additional 1% of the annual net gaming revenue as follows. But it then provides that DFA "is hereby authorized" to divide the additional 1% by the number of voters' signatures. This should be clarified.
 6. I am also uncertain regarding the actual distribution of these funds to canvassers. Section Six, subsection (1), states that the additional 1% shall be paid to DFA annually beginning after passage of the amendment and ending in November, 2005. The language in subsections (a) and (c)(2) then suggests that the canvassers are to receive their payments annually. If the intent is for the canvassers to be paid a fixed amount each year until 2005, based upon the signatures they collected to get this measure on the ballot in the 2002 election, then in my view this should be clearly stated in both the text and the ballot title.
 7. Section Eight states that the amendment "shall be self executing." It then requires the General Assembly and state and local rule making authorities to "make all other and further laws and regulations necessary to the enforcement" of the amendment. The extent of this rulemaking authority is uncertain. In my view, this could give the voter serious ground for reflection, particularly given the significance of the subject matter, i.e., your constitutional authority to operate gambling. The exact nature and extent of the governing authorities' regulatory authority under your proposed amendment should, therefore, be clarified for proper reflection in the ballot title.
As I have pointed out to you on previous occasions, my office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107
(c). I strongly urge in this regard that you refrain from submitting anyfurther measures until you have obtained legal counsel to assist you indrafting a measure that meets the requirements of law. You have now resubmitted five variations of this proposal, each time with significant additions or modifications beyond those problems and ambiguities that have prevented certification. As I have previously acknowledged (see Op. Att'y Gen. 2000-280), I recognize and support your right of initiative under Amendment 7 to the Arkansas Constitution. However, this right will be meaningless if you are unable to submit a measure that can be fairly and adequately summarized.
Sincerely,
MARK PRYOR Attorney General