Mr. Barry Emigh 1104 Seventh Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted five similar measures that I rejected due primarily to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. Nos. 2000-320, 2000-312, 2000-288, 2000-239 and 2000-215. You have made revisions to your proposed amendment and now submit the following popular name and ballot title for my certification:
 Popular Name OPERATION OF BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS, AND OPERATION OF FOR PROFIT GAMBLING ON WATER VESSELES [SIC]
 Ballot Title AN AMENDMENT AUTHORIZING THE IMMEDIATE OPERATION OF BINGO AS THE RISKING OF MONEY ON A GAME PLAYED WITH CARDS HAVING NUMBERED SQUARES CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY BY COVERING THE NUMBERS ON THE CARDS IN ANY SUCH MANNER AS SHALL BE REQUESTED BY THE OPERATOR OF THE GAME AS A VOLUNTARY OPTION OF OPERATION BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; AUTHORIZING THE IMMEDIATE OPERATION OF RAFFLES AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE OR PRIZES AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE AS A VOLUNTARY OPTION OF OPERATION BY ANY NON-PROFIT ORGANIZATION INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; AUTHORIZING THE IMMEDIATE OPERATION OF GAMBLING BY BARRY LEE EMIGH, TO HIRE PERSONS TO OPERATE GAMBLING, AND TO SUBCONTRACT THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S) TO BE OPERATED ONLY ON WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHOUT LICENSE OR FEE ON ANY DAY FOR THE WHOLE OF A 24 HOUR DAY WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES ONLY ON THOSE WATER VESSELS OPERATING GAMBLING ONLY DURING THE OPERATION OF GAMBLING WITHOUT LICENSE OR FEE WITHIN ANY COUNTY OF THE STATE WITH EXCEPTION OF EXCLUSION AS PROVIDED HEREIN TO THE VOTERS OF ANY COUNTY UNDER AMENDMENT 7 OF THE ARKANSAS CONSTITITUTION [SIC]; DEFINING GAMBLING AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS ON A CHANCE WHERE ONE MUST BE LOSER AND THE OTHER GAINER WITH THE USE OF COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEEL, SLOT MACHINES OF ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS USED IN ANY MANNER AND GAMING TABLES OF ANY KIND FOR THE USE OF DICE USED IN ANY MANNNER [SIC] AS A VOLUNTARY OPTION OF OPERATION OF ANY ONE, OR MORE, OR ALL OF THE AFOREMENTIONED GAMBLING AND GAMING DEVICES; PROVIDING THE OPERATION OF GAMBLING ON ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE SHALL BE TRANSFERABLE FROM BARRY LEE EMIGH TO HIS HEIRS, THEIR HEIRS AND SO ON WITH SUCH TRANSFER OF AN INHERITANCE TO BE WITHOUT TAXATION OR FEE BY THE STATE ON THE PROPERTY USED FOR THE PURPOSE OF GAMBLING; PROVIDING FOR THE TRANSFER OF THE GAMBLING OPERATION IN PART, OR AS A WHOLE, BY BARRY LEE EMIGH, OR BY HIS HEIRS, THEIR HEIRS AND SO ON TO ANY OTHER PERSON, COMPANY OR CORPORATION TO BE APPROVED BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES OF THE GENERAL ASSEMBLY; NO GAMBLING SHALL BE OPERATED BY BARRY LEE EMIGH, OR BY HIS HEIRS, THEIR HEIRS AND SO ON, OR BY ANY OTHER PERSON, COMPANY OR CORPORATION ON ANY WATER VESSEL NOT ANCHORED ON A NAVIGABLE WATER WAY OR PUBLIC LAKE; AUTHORIZING THE LEGAL VOTERS OF ANY COUNTY WITH THE LOCAL BALLOT OPTION UNDER THE PROVISIONS OF AMENDMENT 7 OF THE ARKANSAS CONSTITUTION TO ACCEPT OR REJECT BY THE LEGAL VOTERS OF THAT COUNTY THE WHOLE OPERATION OF GAMBLING ON ALL WATER VESSELS ON ANY NAVIGABLE WATER WAYS OR PUBLIC LAKES WITHIN THAT COUNTY OPERATED BY BARRY LEE EMIGH OR BY HIS HEIRS, THEIR HEIRS AND SO ON, OR BY ANY OTHER PERSON, COMPANY OR CORPORATION REGARDLESS IF GAMBLING IS BEING OPERATED AT THE TIME OF THE REGULAR GENERAL ELECTION, OR NOT, WITHIN THAT COUNTY; PROVIDING ANY CONTRACTS FOR WORK, CONTRACTS FOR SERVICES, SUBCONTRACTING OF THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S), LEASE OF PROPERTY, BANK LOANS AND LIENS ON PROPERTIES USED FOR THE GAMBLING OPERATION OPERATED BY BARRY LEE EMIGH, OR BY HIS HEIRS, THEIR HEIRS AND SO ON, OR BY ANY OTHER PERSON, COMPANY OR CORPORATION SHALL NOT REQUIRE THE APPROVAL OF THE GENERAL ASSEMBLY; AUTHORIZING THE LEGAL SHIPMENT OF GAMBLING DEVICES ONTO ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR OPERATED BY ANY OTHER PERSON, COMPANY OR CORPORATION; PROHIBITING ANY PERSON UNDER THE AGE OF 21 SHALL TO BE ALLOWED TO PARTICIPATE IN GAMBLING ON ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR OPERATED BY ANY OTHER PERSON, COMPANY OR CORPORATION; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION OPERATING GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PAY A 4% TAX ON THE NET GAMING REVENUE EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FROM GAMBLING OPERATED ON ALL WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE TO BE PAID TO THE DEPARTMENT OF FINANCE AND ADMINISTRATION AND DEPOSITED IMMEDIATELY INTO THE STATE'S GENERAL FUND; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION OPERATING GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PAY A 2% TAX ON THE NET GAMING REVENUE EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FROM GAMBLING OPERATED ON EACH WATER VESSEL ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN A COUNTY TO BE PAID TO THAT COUNTY'S GENERAL FUND; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION OPERATIG [SIC] GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PAY A 2% TAX ON THE NET GAMING REVENUE EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FROM GAMBLING OPERATED ON EACH WATER VESSEL ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE JURISDICTION OF A CITY TO BE PAID TO THAT CITY'S GENERAL FUND; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION OPERATING GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PAY AN 8% TAX ON THE NET GAMING REVENUE EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FROM GAMBLING OPERATED ON ALL WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE TO THE DEPARTMENT OF EDUCATION AND DISTRIBUTED AS FOLLOWS: REQUIRING THE PRINCIPAL, DEAN OF STUDENTS OR CHEIF [SIC] ADMINISTRATOR, BY WHAT EVER NAME, OF A PUBLICLY FUNDED PRE-SCHOOL, KINDERGARTEN, ELEMENTARY, JUNIOR HIGH OR HIGH SCHOOL ON THE FIRST TUESDAY OF OCTOBER OF EACH YEAR TO MAKE A LIST OF ALL THOSE STUDENTS ENROLLED AT THAT PUBLICLY FUNDED GRADE SCHOOL TO BE SUBMITTED TO THE DEPARTMENT OF EDUCATION WITHIN 10 WORKING DAYS AFTER THE FIRST TUESDAY OF OCTOBER OF EACH YEAR WITH THE AMOUNT OF THE 8% NET GAMING REVENUE TAX BEING DIVIDED BY THE TOTAL NUMBER OF ALL STUDENTS ENROLLED WITHIN THE STATE AT ALL PUBLICLY FUNDED PRE-SCHOOL, KINDERGARTEN, ELEMENTARY, JUNIOR HIGH AND HIGH SCHOOLS AS SUBMITTED TO BE PAID TO EACH PUBLICLY FUNDED GRADE SCHOOL BASED UPON THE NUMBER OF STUDENTS ENROLLED AT THAT PUBLICLY FUNDED GRADE SCHOOL, LESS ANY DEDUCTION, WITHIN 20 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR WITHOUT THE REQUIREMENT OF AN APPROPRIATION BY THE GENERAL ASSEMBLY; AUTHORIZING THE DEPARTMENT OF EDUCATION TO DEDUCT THE REASONABLE COSTS AND EXPENSES OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION FROM THE 8% ANNUAL NET GAMING REVENUE TAX USED TO FUND THOSE PUBLICLY FUNDED PRE-SCHOOL, KINDERGARTEN, ELEMENTARY, JUNIOR HIGH AND HIGH SCHOOL; AUTHORIZING THE GENERAL ASSEMBLY BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES TO REGULATE THE APPROPRIATE USE OF THE ANNUAL NET GAMING REVENUE TAX DISTRIBUTED BY THE DEPARTMENT OF EDUCATION TO ANY PUBLICLY FUNDED PRE-SCHOOL, KINDERGARTEN, ELEMENTARY, JUNIOR HIGH AND HIGH SCHOOL TO INCLUDE THE APPROPRIATE USE OF SUCH FUND IN THE EVENT OF A PUBLICLY FUNDED GRADE SCHOOL CLOSING; REQUIRING BARRY LEE EMIGH, OR HIS HERIS [SIC], THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION OPERATING GAMBLING ON THE FIRST TUESDAY OF DECEMBER, 2004, TO PAY THE DEPARTMENT OF FINANCE AND ADMINISTRATION 1% OF THE ANNUAL NET GAMING REVENUE EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER, 2004, TO BE DIVIDED BY THE NUMBER OF REGISTERED VOTER'S SIGNATURES COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE REGULAR GENERAL ELECTION WITH EACH CANVASSER BEING PAID FOR EACH SIGNATURE THEY HAVE OBTAINED THAT IS COUNTED AS A VALID REGISTERED VOTER'S SIGNATURE BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE REGULAR GENERAL ELECTION BALLOT TO BE PAID TO THOSE CANVASSERS WITHIN 20 WORKING DAYS FROM THE FIRST TUESDAY OF DECEMBER, 2004, WITHOUT THE REQUIREMENT OF AN APPROPRIATION BY THE GENERAL ASSEMBLY WITH EXCEPTION OF EXCLUSION AS PROVIDED HEREIN; EXEMPTING THE AMOUNT PAID TO ANY CANVASSERS OF THIS AMENDMENT BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION AS PROVIDED HEREIN FROM THE STATE TAX ON EARNED INCOME; AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DEDUCT THE REASONABLE COSTS AND EXPENSES OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DISTRIBUTE THE 1% ANNUAL NET GAMING REVENUE TO THE CANVASSERS OF THIS AMENDMENT FROM THE 1% ANNUAL NET GAMING REVENUE USED FOR THE PAYMENT OF CANVASSERS; THE DEPARTMENT OF FINANCE AND ADMINISTRATION SHALL MAKE NO PAYMENT FROM THE 1% OF THE ANNUAL NET GAMING REVENUE TO ANY CANVASSER FOR THEIR OWN SIGNATURE ON A PETITION COUNTED AS A VALID SIGNATURE BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE BALLOT WITH THEIR SIGNATURE ON THAT PETITION AS A CANVASSER; EXCEPT AS SPECIFIED IN THIS AMENDMENT THERE SHALL BE NO OTHER TAX OF ANY KIND LEVIED BY THE STATE ON THE REVENUE DERIVED FROM THE OPERATION OF GAMBLING AND GAMING DEVICES ON ANY WATER VESSEL OPERATED ON ANY NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION; NO PROPERTY TAX, FEES, OR ASSESSMENT OF ANY KIND SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, ON ANY WATER VESSEL AND THE CONTENTS THEREIN USED FOR THE OPERATION OF GAMBLING ON ANY NAVIGABLE WATER WAYS OR PUBLIC LAKES WITHIN THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION AS PROVIDED HEREIN; DEFINING THE NET GAMING REVENUE AS THE AMOUNT OF MONEY PROFITTED [SIC] BY GAMBLING AND GAMING DEVICES AFTER THE PAYMENT OF CANVASSERS, PAYMENT OF GAMING LOSES, ANY AND ALL OPERATIONAL COSTS TO INCLUDE, BUT NOT LIMITED TO, EMPLOYEE PAYROLL AND BENEFITS, UTILITIES, LEASES OF PROPERTY, CONTRACTS FOR SERVICES, COMPLIMENTARY ALCOHOLIC BEVERAGES, ADVERTISING AND PROMOTION, AND ALL FEDERAL TAXES; AUTHORIZING THE STATE AUDITOR TO ANNUALLY AUDIT THE BOOKS, RECORDS AND FINANCIAL AFFAIRS OF THE GAMBLING OPERATION OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HERIS [SIC] AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION AS PROVIDED HEREIN ON THE FIRST TUESDAY OF DECEMBER OF EACH YEAR; PROVIDING THIS AMENDMENT TO BE SELF EXECUTING; TO PROVIDE THE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT;
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and your proposed ballot title because the text of your proposed measure contains certain ambiguities that render the measure difficult to understand, and therefore incapable of being fairly and accurately summarized. Among the ambiguities I have noted are the following:
 1. An ambiguity arises under subsection (4) (a) and (b) of Section Five of your proposed amendment, with respect to the calculation of student enrollment and distribution of the 8% net gambling revenue tax to publicly funded schools. Subsection (4) (a) states that the chief authority of a "publicly funded pre-school, kindergarten, elementary, junior high and high school shall make a list of all those students . . . enrolled at that publicly funded grade school. . . ." I am uncertain whether each of the listed schools, i.e., pre-school, kindergarten, elementary, etc., is considered a "grade school," or whether these schools, taken together, are to be considered a "grade school" for enrollment purposes, and hence for purposes of the tax distribution. The various references to" each publicly funded pre-school, kindergarten," etc., and "each publicly funded grade school" are very confusing. I cannot determine the actual intent under this provision as currently drafted. This must be clarified so that the required tax distribution can be properly summarized in the ballot title.
 2. The reference in Section Five, subsection (6) to closure of a "publicly funded grade school" is, similarly, ambiguous.
 3. Section Six, subsection (1), requires the payment of 1% of "the net gaming revenue earned previous to the first Tuesday of November, 2004, earned after passage of this amendment . . .," with the proceeds paid to canvassers based upon voters' signatures. The applicable time period for determining this payment is unclear under this language. Although the following subsection refers to "the annual net gaming revenue," the applicable annual period remains unclear, as this could seemingly be either a 1 or a 2 year period.
 4. The definition of "net gaming revenue" in Section Seven includes "contracts for services," but not the cost of any subcontract for the gambling operation. See Section Two (1). While the reference to "operational costs" may be sufficiently broad to encompass any such cost, the specific inclusion of "contracts for services" arguably raises an ambiguity.
As I have pointed out to you on previous occasions, my office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107
(c). I strongly urge in this regard that you refrain from submitting anyfurther measures until you have obtained legal counsel to assist you indrafting a measure that meets the requirements of law. You have now resubmitted five variations of this proposal, each time with significant additions or modifications beyond those problems and ambiguities that have prevented certification. As I have previously acknowledged (see Op. Att'y Gen. 2000-280), I recognize and support your right of initiative under Amendment 7 to the Arkansas Constitution. However, this right will be meaningless if you are unable to submit a measure that can be fairly and adequately summarized.
Sincerely,
MARK PRYOR Attorney General